Raymond G. Baer, et al., etc., Plaintiffs Below, v. Timothy DeBerry, Jr., Defendant Below-Appellant. Evelyn Marie DeBerry, Hattie DeBerry and Lucile Bravo DeBerry, Defendants Below-Appellees.

Gen. No. 48,344.

First District, First Division.

May 26, 1961.

Heineman, Marks, Simons & Houghteling, of Chicago, for appellant.

Conrad G. Verges, of Chicago, for Evelyn Marie De-Berry, defendant-appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an interpleader action, commenced by the trustees of a union-management welfare plan, because decedent's three wives and a son of his first marriage each claimed the plan death benefit. The chancellor directed payment to the third wife, and the son appeals.

Timothy DeBerry died October 18, 1958, a resident of Chicago, Illinois. He had been married three times. His first marriage was to Hattie DeBerry Mitchell, in

1931 in Mississippi. His second marriage was to Lucile Bravo DeBerry, in 1940 in California. His third and last marriage was to Evelyn Marie DeBerry, in 1954 in Illinois. The son, Timothy, Jr., was born of the first marriage in Tennessee in 1933.

As a milk wagon driver, Timothy, Sr., was a "covered participant" in the "Milk Dealers'-Dairy Employes' Welfare Plan," and had the privilege of designating a beneficiary of a $5,000 benefit payable at his death. He designated "Evelyn Marie DeBerry . . . wife," as the primary beneficiary, and Timothy, Jr., "son" as the secondary beneficiary of the death benefit.

The form used for the purpose of designating the beneficiaries bears the signature of the decedent and is dated January 16, 1956. The form provisions include: "For the purposes of the application of the death benefit provisions of the Plan, a covered participant may designate his spouse, child or children as beneficiary or beneficiaries. If, however, there are no living spouse, child or children, the covered participant for the purpose of the distribution of the death benefit, can designate anyone as his beneficiary."

As the three wives and the son each demanded payment of the death benefit, the trustees of the plan filed an interpleader complaint, in order that the court might determine to whom the death benefit should be paid. The first and second wives each claimed the fund as the lawful living spouse. The third wife, Evelyn Marie DeBerry, claimed as the lawful living spouse and the designated "primary beneficiary." The son asserted that Evelyn Marie DeBerry was not the lawful wife of Timothy, Sr., at the time of death and, therefore, not eligible as a beneficiary, and, as the "secondary beneficiary," he was entitled to the fund.

The chancellor found that Timothy DeBerry "was not shown by the record" to have been divorced from his first and second wives; that he intended Evelyn Marie DeBerry to be the primary beneficiary of the death benefit; and that she is entitled to take "the death benefits as provided by the Plan." The decree ordered the payment of the death benefit to Evelyn Marie DeBerry, less court costs and fees. The instant appeal is that of Timothy DeBerry, Jr.

■ If Evelyn Marie DeBerry was not the lawful wife of Timothy, Sr., at his death, she was not eligible to receive the death benefit because she did not come within any one of the welfare plan classes to whom payment of benefits may be designated by a participant. (Mical v. International Workers Order, Inc. (1945), 326 Ill. App. 398, 400, 62 N.E.2d 21; Barnett v. Brotherhood of Railroad Trainmen (1927), 243 Ill. App. 219, 223; Columbian Circle v. Auslander (1922), 302 Ill. 603, 606, 135 N.E. 53.) Therefore, our principal question is whether Evelyn Marie DeBerry was the lawful wife of Timothy, Sr., at death.

■ ■ In conflicting marriages, it is the rule in this state that a presumption of validity operates in favor of the last marriage, which is not overcome by mere proof of a prior marriage, and that one of the persons thereto had not obtained a divorce. (26 I.L.P., Marriages, § 34.) Where the celebration of a marriage is shown and also a prior marriage, the death or divorce of the former spouse will be presumed, and the burden of proof is on the party asserting the invalidity of the last marriage. Winter v. Dibble (1911), 251 Ill. 200, 206, 95 N.E. 1093; In re Estate of Dedmore (1930), 257 Ill. App. 519, 522; Miller v. Williams (1959), 22 Ill. App. 2d 360, 161 N.E.2d 42.

The presumption in favor of the validity of the third marriage is conceded, but it is argued that the evidence in this record is sufficient to rebut the pre-

sumption that there had been a divorce from the first wife, Hattie, because "evidence which renders the existence of the negative probable is sufficient in the absence of proof to the contrary" (In re Estate of Panico (1932), 268 Ill. App. 585), and that the burden of proof was shifted to Evelyn Marie DeBerry to establish, by direct evidence, the lawful dissolution of the first and second marriages prior to the third marriage.

Hattie Mitchell (first wife) testified she married Timothy, Sr., in Mississippi in 1931, and he left her in Tennessee in 1936 and went to California. He wrote her and sent her money from different places in California, principally from Sacramento. He returned to her in Tennessee about 1940 or 1941 and, after living with her for a short time, he went to Chicago, where he lived until his death, except for Army service in 1943. During his Army service, she received an allotment for herself and Timothy, Jr. She heard of his second marriage in 1940 and, on inquiry by her, he denied it. She married Earnest Mitchell in Crown Point, Indiana, in June, 1948, and thereafter lived with Mitchell in Chicago. Timothy, Jr., resided with them from time to time.

Hattie Mitchell denied divorcing Timothy, Sr., or that he divorced her. She did not recall signing an Indiana marriage application on June 19, 1948, and denied a statement appearing on it that she was divorced from "Tim DeBerry" about 1940 in Mississippi. She admitted that the name "Hattie Allen," signed to the application, was her maiden name; that she used it at the time of her marriage to Mitchell. She testified that when she married Mitchell in 1948, she was aware that she was not divorced from Timothy, Sr. She remarried Mitchell in December, 1959.

The testimony of Lucile Bravo DeBerry (second wife) shows that she lives in California; that she married Timothy, Sr., in October, 1940, in Tulare, Cali-

fornia; that they lived together for one or two years in Tulare; that he left her, and she never heard from him thereafter and did not know his whereabouts until after his death. She denied that she was divorced from him.

Evelyn Marie DeBerry (third wife) testified that before she and Timothy, Sr., were married in Chicago in 1954, they obtained a marriage license; that she had previously been married in 1941 and was divorced in 1946 (copy of her decree is in the record). Timothy, Sr., told her about his first wife, and that they had been divorced in 1952. She did not see a divorce decree. She lived with him as his wife in Chicago until his death. She denied being present at any conversation between Timothy, Sr., and Timothy, Jr., in which Timothy, Sr., said he intended to get a divorce from his first wife.

Timothy, Jr., testified that in 1955, in the presence of Evelyn Marie DeBerry, Timothy, Sr., told him that he had married her and intended to get a divorce from his first wife; that between 1940 and 1943, he learned of the second marriage; that he knew his mother, Hattie Mitchell, married Earnest Mitchell in 1948, because Mitchell lived in the apartment with them and "he had a license"; also, his mother told him they were married. As far as he knew, Timothy, Sr., never obtained a divorce from his mother, Hattie Mitchell, and the basis of his knowledge was several conversations with his father.

Brady Hardin, a childhood acquaintance of Timothy, Sr., worked with him from August, 1947, until his death. He had a conversation with Timothy, Sr., four days after the third marriage. "He told me that he had been married and I spoke to him about Hattie, his first wife. I asked him if Hattie got a divorce and he said, 'Oh, yea, we got a divorce through the newspapers.' "

The exhibits received in evidence include certified copies of marriage certificates for each marriage, and authenticated statements by county officials, showing unsuccessful divorce record searches made in Illinois, Tennessee, California and Mississippi. The exhibits also include a photostatic copy of the application for the marriage license, executed by Hattie Allen (the first wife) in Lake County, Indiana, dated June 19, 1948, in which she states that she was divorced from "Tim DeBerry" about 1940, in Senatobia, Mississippi.

A review of the evidence indicates that the testimony of Lucile Bravo DeBerry, the second wife, contributes nothing to our question. The testimony of Hattie Mitchell, the first wife, and her son must be evaluated in the light of both being claimants to the fund, and is entitled to little credence. The circumstances of her marriage to Mitchell in 1948 indicate that either she secured a divorce from Timothy, Sr., or that she knowingly committed bigamy. Timothy, Jr., testified that his father told him there was no divorce from Hattie Mitchell. He had no direct information as to this. His claim is bottomed on the ineligibility of Evelyn Marie DeBerry, and his testimony is of little value. The negative divorce searches have probative value. However, considering the background of Timothy, Sr., who left his first wife in 1936, who lived in various places and engaged in various types of work, and who went through presumably lawful marriage ceremonies, we do not conclude the divorce searches here are sufficient to overcome the presumption that Timothy, Sr., did not commit bigamy. In re Estate of Dedmore, 257 Ill. App. 519, 523.

██ ██ A reviewing court will not disturb the findings of the trial court unless they are manifestly against the weight of the evidence. Where a cause is heard by a chancellor without a jury, his conclusions on facts are entitled to the same weight as a

jury verdict. Brown v. Zimmerman (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518.

■■ The parties disagree as to the proper interpretation of the finding in the decree that Timothy DeBerry was not shown by the record to have been divorced from Hattie DeBerry Mitchell and Lucile Bravo Deberry. However, we believe from the decree ordering payment of the death benefit to Evelyn Marie DeBerry, that it is implicit that the chancellor concluded that the evidence in the record did not rebut the strong presumption of the validity of the third marriage to Evelyn Marie DeBerry. (In re Estate of Dedmore, 257 Ill. App. 519.) We cannot say, as we must in order to reverse this decree, that an opposite conclusion is clearly apparent. Olin Industries, Inc. v. Wuellner (1954), 1 Ill. App. 2d 267, 271, 117 N.E. 2d 565; In re Estate of Meade (1958), 17 Ill. App. 2d 286, 149 N.E.2d 792; Balfour v. Balfour (1959), 20 Ill. App. 2d 590, 597, 156 N.E.2d 629.

For the reasons stated, the decree is affirmed.

Affirmed.

KILEY, P. J. and BURMAN, J., concur.